# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES A. JOHNSON, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No.: 10-cv-386-DRH-PMF ) |
| MIKE ATCHISON, | ) ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This case is before the Court on James A. Johnson's § 2254 petition for a writ of habeas corpus (Doc. No. 1). A response is on file, with supporting exhibits (Doc. Nos. 15, 16). Johnson has filed his traverse (Doc. No. 22).

### I. Background

Johnson is confined at Menard Correctional Center, where he is serving natural life sentences for murdering Albert Greenlee and Marshelle Wooten. He is serving additional time for attempted murder of Marshelle Wooten's brother, Lamont Wooten, and for armed robbery of Albert Greenlee. Those convictions were entered in the Circuit Court of St. Clair County in 1995, following a jury trial.[1]

On November 9, 1993, Johnson acquired a firearm from Myron Staten and Christopher Grant. He went to the home of Marshelle Wooten in East St. Louis, Illinois, accompanied by Deangelo Carter and Demond Hendricks. At the time, Marshelle Wooten shared her home with her brother, Lamont Wooten, Albert Greenlee, and her children. After Carter purchased drugs,

---

[1] Warden Mike Atchison is substituted for Yolande Johnson as the respondent, in view of Johnson's confinement at Menard Correctional Center. Fed. R. Civ. P. 25(d).

Johnson drew his weapon and robbed Albert Greenlee of drugs and cash. At Johnson's instruction, Hendricks retrieved a shotgun from a vehicle. When Hendricks returned with the shotgun, Johnson shot Albert Greenlee and Marshelle Wooten and instructed Hendricks to kill Lamont Wooten. Hendricks shot Lamont Wooten. After fleeing the home, Johnson gave the firearms to Myron Staten.

Albert Greenlee and Marshelle Wooten died. Lamont Wooten was fortunate. He survived and described the events at trial. Portions of Lamont Wooten's testimony were corroborated by Carter. Other details were supplied or corroborated by Antonio Williams, Jeanice Gunner, Patricia Williams, Brandi Stiff, Myron Staten, Chris Gerund, Fontonia Fortner, Delbert Marion, Carlos Mosley, Racieron Staten, Gerald Crenshaw, Evan Kyle, Officer Joshway, Lester Wells, Dr. Harry Parks, Dr. Olusola Orebiyi, James Hall, and Kurt Sachtleben. Although Johnson did not testify, he presented a defense through cross-examination and testimony from Robin Meeks, Fred Morris, Sonya Flie, Deandre Commons, and Tyra Cash.

**II.  Habeas Claims**

Johnson has pleaded his habeas claims as nine grounds (Doc. No. 1). In his Answer, the respondent separated Johnson's claims into eleven grounds (Doc. No. 15, pp. 7-8). In light of the obligation to give a liberal construction to pro se pleadings, this report will address the following eleven grounds for relief:

1. The trial court's admission of unreliable identification testimony by Lamont Wooten violated rights protected by the Fifth, Sixth, and/or Fourteenth Amendments.

2. The trial court's restriction of two categories of relevant evidence violated rights protected by the Fifth, Sixth, Eighth and Fourteenth Amendments:

    (a).  Cross-examination of "six pack" members regarding .380 pistol

        (b).      Testimony linking .380 pistol to a crime in the Roosevelt Homes neighborhood

3. The trial court's admission of hearsay testimony by Brandi Stiff violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

4. The trial court's rejection of proposed jury instructions describing the lesser included offenses of second degree murder and involuntary manslaughter violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

5. The prosecution's failure to prove guilt beyond a reasonable doubt on each element of first-degree murder, attempted first-degree murder, and armed robbery violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

6. The prosecutor's deliberate exclusion of persons from the jury on grounds of race violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

7. The trial court's failure to admonish jurors of their responsibilities throughout the trial violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

8. Trial counsel's deficient performance deprived Johnson of effective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments, as follows:

    (a).    Counsel failed to call Demond Hendricks as a witness

    (b).    Counsel failed to call other available defense witnesses

    (c).    Counsel failed to allow Johnson to testify in his own defense

    (d).    Counsel was impaired by psychological incapacitation

    (e).    Counsel's representation was not zealous

9. Appellate counsel's deficient performance deprived Johnson of effective assistance in violation of the rights protected by the Fifth, Sixth, and Fourteenth Amendments, as follows:

    (a).    Counsel was impaired by psychological incapacitation

    (b).    Counsel failed to raise ineffective assistance of trial counsel

      (c).    Counsel failed to raise the issues raised during post-conviction proceedings

      (d).    Counsel failed to raise the issue raised during state habeas proceedings

      (e).    Counsel's representation was not zealous

10.    The state court rejected Johnson's meritorious claim of actual innocence in violation of rights protected by the Fifth, Sixth, and Fourteenth Amendments

11.    The prosecution's amendment of charges following grand jury indictment violated rights protected by the First, Fifth, Sixth, and Fourteenth Amendments.

### III. State Court Proceedings

Johnson pursued a direct appeal, raising the arguments listed above as Grounds 1-5. When his convictions were affirmed, he made a late effort to seek a rehearing and a late effort to file a petition for leave to appeal the Illinois Appellate Court's decision to the Illinois Supreme Court. Those efforts were not successful. Later, Johnson completed a full round of post-conviction proceedings. He also completed a full round of state habeas corpus proceedings (Doc. Nos. 16-1 through 16-15).

Johnson has exhausted the remedies available in the courts of Illinois. There are no issues regarding the statutory limitations period.

### IV. Procedural Default

Respondent argues that the doctrine of procedural default bars federal review of numerous grounds that were not raised through one complete round of review in the state court. Johnson counters with two arguments. First, he takes the position that his procedural default is excused by cause and prejudice. Alternatively, he argues that his defaulted claims should be considered in order to avoid a fundamental miscarriage of justice.

In *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), the Supreme Court held that a habeas petitioner is required to pursue a discretionary appeal in the State's highest court in order to satisfy the statutory exhaustion requirement set forth in § 2254(c). Failure to do so amounts to a procedural default. *Id.* at 848. Johnson's direct appeal became final before the *Boerckel* case was decided. As noted above, Johnson made unsuccessful efforts to obtain a rehearing from the Illinois Appellate Court and file a petition for discretionary review following direct appeal. During the subsequent post-conviction proceedings, the arguments supporting Ground 7, 8(b), 8(c), 8(e), 9(d), and 9(e) were omitted when Johnson appealed the denial of his post-conviction petitions or when he sought leave to appeal to the Illinois Supreme Court.[2]

Johnson suggests that the rule announced in *Boerckel* should not be applied retroactively to create a procedural default. This argument should be rejected. *Boerckel* represents the Supreme Court's interpretation of § 2254(c). That interpretation was applied to the *Boerckel* case itself and the Court of Appeals has determined that the holding is retroactive in application. *Moore v. Casperson*, 345 F.3d 474, 487, (7th Cir. 2002); *Rittenhouse v. Battles*, 263 F.3d 689, 697 (7th Cir. 2001). Because Johnson did not raise the following grounds through one complete round of review in the state courts, these grounds are procedurally defaulted:

1. The trial court's admission of unreliable identification testimony by Lamont Wooten violated rights protected by the Fifth, Sixth, and/or Fourteenth Amendments.

2. The trial court's restriction of two categories of relevant evidence violated rights protected by the Fifth, Sixth, Eighth and Fourteenth Amendments:

    (a). Cross-examination of "six pack" members regarding .380 pistol

---

[2] Respondent's procedural default argument may have merit with respect to all subparts of Johnson's ineffective assistance of trial counsel claim. I will address Ground 8(a) on the merits because Johnson's state court arguments may have supplied enough information to preserve that claim for habeas review.

    (b).  Testimony linking .380 pistol to a crime in the Roosevelt Homes neighborhood

3.  The trial court's admission of hearsay testimony by Brandi Stiff violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments

4.  The trial court's rejection of proposed jury instructions describing the lesser included offenses of second degree murder and involuntary manslaughter violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

5.  The prosecution's failure to prove guilt beyond a reasonable doubt on each element of first-degree murder, attempted first-degree murder, and armed robbery violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

7.  The trial court's failure to admonish jurors throughout trial violated rights protected by the Fifth, Sixth, and Fourteenth Amendments

8.  Trial counsel's deficient performance deprived Johnson of effective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments, as follows:

  (b).  Counsel failed to call other available defense witnesses

  (c).  Counsel failed to allow Johnson to testify in his own defense

  (d).  Counsel was impaired by psychological incapacitation

  (e).  Counsel's representation was not zealous

9.  Appellate counsel's deficient performance deprived Johnson of effective assistance in violation of the rights protected by the Fifth, Sixth, and Fourteenth Amendments, as follows:

  (b).  Counsel failed to raise ineffective assistance of trial counsel

  (d).  Counsel failed to raise the issue raised during state habeas proceedings

  (e).  Counsel's representation was not zealous

Johnson is correct in pointing out that a procedural default will be excused upon a showing of cause and prejudice. The Supreme Court defines cause sufficient to excuse a procedural default as "some objective factor external to the defense" which precludes the petitioner's ability to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488

(1986). Where ineffective assistance of appellate counsel is asserted as cause for a procedural default, the assertion must be fairly presented to the state courts as an independent claim. *Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000); *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).

Johnson suggests that he failed to seek discretionary review from the Illinois Supreme Court following his direct appeal due to an error made by attorney Ramona L. Marten, who represented him on direct appeal. The materials submitted show that Marten was working with attorney Scott Rosenblum, whom Johnson had hired to defend him at trial. At some point, Marten experienced stress-related symptoms and ended her employment relationship with Rosenblum (Doc. Nos. 16-40, pp. 66-68; 16-42, pp. 6-13). After Johnson's appeal was resolved, Rosenblum prepared an affidavit acknowledging Marten's psychological issues and suggesting that her work on Johnson's case had suffered (Doc. No. 16-6, p. 10). Rosenblum obtained Johnson's file, reviewed it, and advised Johnson that a motion seeking a rehearing would not be filed. Rosenblum further suggested that Johnson could proceed in federal court.

Johnson believes Marten's psychological incapacitation contributed to and excuses his procedural default. This argument in favor of a finding of cause fails for several reasons. First, any failure by Marten to advise Johnson to include the defaulted claims in a petition for leave to appeal to the Illinois Supreme Court does not qualify as an objective factor external to the defense. Marten was not appointed by a state official to provide legal advice to Johnson. Moreover, at the relevant time, Johnson received legal services from attorney Rosenblum, whose competence has not been challenged (Doc. No. 16-40, p. 13). Also, Johnson's right to receive effective assistance from counsel did not extend beyond his direct appeal. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Wainwright v. Torna*, 455 U.S. 586, (1982). Johnson cannot

claim that he was harmed by constitutionally ineffective assistance of counsel when he had no constitutional right to be represented by an attorney in the state proceeding. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Finally, while Johnson did raise ineffective assistance of appellate counsel as a ground for post-conviction relief in the state court proceedings, he did not suggest that Marten provided poor advice regarding his opportunity to ask the Illinois Supreme Court to grant a petition for leave to appeal (Doc. No. 16-4, pp. 14-15). In short, Johnson makes an insufficient showing of cause to excuse his procedural default. Without a showing of cause, there is no need to evaluate the element of prejudice.

Johnson also asserts that his procedural default should be excused to avoid a fundamental miscarriage of justice. This is a very narrow exception, requiring a demonstration that the a constitutional deprivation caused the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995). Johnson must show that it is more likely than not that no reasonable juror would have convicted him of two murders, attempted murder, and armed robbery upon consideration of new evidence. *Id.* at 327.

On this point, Johnson has not directed the Court's attention to specific new evidence of his actual innocence. During the post-conviction proceedings, Johnson presented evidence from Gerund Higgins, who described a conversation in which Demond Hendricks proclaimed that he had been the only person at the scene of the crimes who fired a weapon. Other evidence either suggests that trial witnesses had reasons to give false testimony or lends support to the alibi defense by suggesting that Johnson spent the day with Demond Hendricks at a residence shared by Tyra Cash and Robin Meeks. When the new evidence is considered in light of the evidence heard by the jury at trial, it does not lend considerable support to Johnson's claim of actual innocence. A reasonable jury would not likely believe and rely on new testimony by Demond

Hendricks, Gerund Higgins, or Johnson. The other new evidence is not strong enough to generate a reasonable doubt about Johnson's guilt. In these circumstances, the fundamental miscarriage of justice exception should not provide a gateway to a review of the procedurally defaulted claims.

In sum, federal review of the merits of the following habeas claims is barred on the basis of procedural default:

1. The trial court's admission of unreliable identification testimony by Lamont Wooten violated rights protected by the Fifth, Sixth, and/or Fourteenth Amendments.

2. The trial court's restriction of two categories of relevant evidence violated rights protected by the Fifth, Sixth, Eighth and Fourteenth Amendments:

    (a). Cross-examination of "six pack" members regarding .380 pistol

    (b). Testimony linking .380 pistol to a crime in the Roosevelt Homes neighborhood

3. The trial court's admission of hearsay testimony by Brandi Stiff violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments

4. The trial court's rejection of proposed jury instructions describing the lesser included offenses of second degree murder and involuntary manslaughter violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

5. The prosecution's failure to prove guilt beyond a reasonable doubt on each element of first-degree murder, attempted first-degree murder, and armed robbery violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

7. The trial court's failure to admonish jurors throughout trial violated rights protected by the Fifth, Sixth, and Fourteenth Amendments

8. Trial counsel's deficient performance deprived Johnson of effective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments, as follows:

    (b). Counsel failed to call other available defense witnesses

    (c). Counsel failed to allow Johnson to testify in his own defense

    (d). Counsel was impaired by psychological incapacitation

(e). Counsel's representation was not zealous

9. Appellate counsel's deficient performance deprived Johnson of effective assistance in violation of the rights protected by the Fifth, Sixth, and Fourteenth Amendments, as follows:

(b). Counsel failed to raise ineffective assistance of trial counsel

(d). Counsel failed to raise the issue raised during state habeas proceedings

(e). Counsel's representation was not zealous

**V. Non-cognizable Claims – Grounds 10 and 11**

Respondent also argues that two grounds supporting Johnson's petition for habeas relief are not cognizable in this proceeding:

10. The state court rejected Johnson's meritorious claim of actual innocence in violation of rights protected by the Fifth, Sixth, and Fourteenth Amendments

11. The prosecution's amendment of charges following a grand jury indictment violated rights protected by the First, Fifth, Sixth, and Fourteenth Amendments.

As to Ground 11, Johnson disagrees. He proposes that his conviction violates federal law because it was based on a constitutionally defective indictment. After Johnson was indicted by a grand jury on April 8, 1994, the prosecutor filed an information on May 5, 1994. The information revised the charges, exposing Johnson to the death penalty. Johnson maintains that a grand jury indictment may not be modified by a less formal charge in an information.

The respondent is correct that neither ground states a cognizable basis for habeas relief. Section 2254 authorizes federal courts to entertain an application for a writ of habeas corpus only on the ground that the applicant is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). With respect to Ground 10 (actual innocence), there is no federally recognized right to avoid custody based on a claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006)(reserving the question of whether

federal courts may entertain claims of actual innocence in death penalty cases). With respect to Ground 11 (defective indictment), the Fifth Amendment guarantee of indictment by grand jury extends to *federal* prosecutions. Because the Amendment's grand jury requirement has not been extended to the States through the Fourteenth Amendment, Johnson's concerns regarding the prosecution's amendment of the grand jury's bill of indictment by a less formal information does not raise a federal claim for habeas relief. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994); *Hurtado v. California*, 110 U.S. 516, 535 (1884).

## VI. Merits Review – Ground 6

In this ground, Johnson claims that the prosecutor deliberately excluded persons from the jury on grounds of race in violation of rights protected by the Fifth, Sixth, and Fourteenth Amendments. Respondent holds the position that Johnson has not met his burden of showing that the state court's decision was an unreasonable application of law.

The Constitution prohibits prosecutors from removing jurors on the basis of race. *Batson v. Kentucky*, 476 U.S. 79 (1986); *Powers v. Ohio*, 499 U.S. 400 (1991). Johnson maintains that the prosecutor used peremptory challenges in a racially discriminatory manner.

Prior to trial, the State gave notice to Johnson of its intent to seek the death penalty. The Court and the parties conducted voir dire of 83 potential jurors. Johnson is black, as were all three victims. The prosecutor used peremptory challenges to strike approximately eleven white potential jurors and four black potential jurors. The prosecutor selected one Asian-American female and three black females to serve as members of the jury. The prosecutor also selected a black man as an alternate juror.

During the state court proceedings, the prosecutor explained why she used peremptory challenges to remove some black individuals. She initially pointed to statements made by Ms.

Lavoriss Crawford. Those statements suggested that Crawford's brother had been charged and convicted of a violent crime in St. Clair County within the past ten years. The prosecutor further explained that she had decided to use one peremptory challenge to remove a white female for a similar reason. The prosecutor also referred to responses provided by Ms. Crawford, Ms. Cleo Callahan, Ms. Patrice Perry, and Ms. Audrey Mitchell to questions exploring their ability to impose the death penalty. The prosecutor formed the impression that their responses were equivocal or reflected an unacceptable degree of confusion (Doc. No. 16-41, p. 11-48).

The Illinois Appellate Court determined the facts and evaluated this argument on the merits. Applying the standard established in *Batson v. Kentucky*, 476 U.S. 79 (1986), the Illinois Appellate Court held that the State's challenges to potential jurors Lavoriss Crawford, Cleo Callahan, Patrice Perry, and Audrey Mitchell were race neutral. In particular, the Court held that Crawford was challenged because her brother had been charged and convicted of the same crime in the same county and that Callahan, Perry, and Mitchell were challenged because of answers they provided in response to questions about the death penalty (Doc. No. 16-6 pp. 3-7).

Habeas relief may be granted to Johnson if the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). A state court unreasonably applies Supreme Court precedent if the correct rule is unreasonably applied to the facts of the particular case or the state court unreasonable extends or refuses to extend a principal of law to a new context. *Williams v. Taylor*, 529 U.S. 362, 405 - 407 (2000); *Sutherland v. Gaetz*, 581 F.3d 614, 616 (7th Cir. 2009).

Johnson's argument in support of this ground does not suggest a basis for concluding that the Illinois Appellate Court's evaluation was unreasonable. He simply points to the prosecutor's

decision to exclude some black individuals from the jury (Doc. No. 1-3, p. 15). Johnson's subjective belief that the prosecutor excluded jurors on account of race does not suffice.

The Court has reviewed the relevant materials in light of the statutory obligation to give state court factual findings the benefit of doubt. 28 U.S.C. § 2254(e)(a). Considering further the highly deferential standard governing federal habeas review, relief is not warranted. There is no basis to find that the Illinois Appellate Court applied the wrong legal standard or made an unreasonable determination that the prosecutor exercised race-neutral peremptory challenges to remove Crawford, Callahan, Perry, and Mitchell from the jury. *See Felkner v. Jackson*, __ U.S. __, 131 S.Ct. 1305, 1307-08 (2011)(recognizing that the habeas standard requires explanation of a rejection of a state court ruling on a *Batson* claim).

**VII.    Merits Review – Ground 8(a)**

In this ground, Johnson claims that trial counsel's deficient performance deprived him of effective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments by failing to call Demond Hendricks as an alibi witness.

Johnson was represented at trial by attorneys Joseph Green and Ramona Marten, who were privately retained. They constructed an alibi defense through a number of witnesses but did not call Demond Hendricks to support that defense. If called, Hendricks would have testified that, on the day the crimes were committed, Johnson spent the entire day with him at the home of Tyra Cash.

Federal law requires Johnson to overcome a strong presumption that Green and Marten provided adequate assistance and made all significant decisions in the exercise of reasonable judgment. He can do that by showing that Green and Marten failed to act reasonably considering all the circumstances. Further, he must show that, but for the attorney error, the

result of his trial would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-694 (1984).

The Illinois Appellate Court applied the *Strickland* standard and determined that Johnson's trial counsel made a purposeful decision not to call Demond Hendricks as a witness for the defense.  This decision was accepted as sound trial strategy.  It was noted that Hendricks had character flaws, including a criminal past and flight to Texas after the crimes were committed, which could serve to impeach his credibility.  Also, several witnesses could link Hendricks to a firearm on the night of the crimes.  Furthermore, trial counsel was aware that the surviving victim had originally identified Hendricks as the shooter.  The Illinois Appellate Court found that these factors showed that Johnson's trial counsel could rationally make a strategic decision to maintain distance between Johnson and Hendricks.  The Illinois Appellate Court also recognized that Johnson's trial counsel vigorously presented a defense through cross-examination (Doc. No. 16-6, pp. 7-9).

Johnson has not shown that the Illinois Appellate Court unreasonably applied the *Strickland* standard.  The Illinois Appellate Court applied that standard by evaluating the circumstances surrounding counsel's decision not to call Hendricks as an alibi witness, as well as counsel's efforts to construct a defense through cross-examination.  It was reasonable for the Illinois Appellate Court to reach the conclusion that trial counsel made a strategic call that fell into the wide range of reasonable professional assistance.  In these circumstances, habeas relief is not warranted.

### VIII.  Merits Review – Ground 9(a) and (c)

In this section, Johnson claims that his appellate counsel's deficient performance deprived him of effective assistance in violation of the rights protected by the Fifth, Sixth, and Fourteenth Amendments, as follows:

(a).    Counsel's representation was impaired by psychological incapacitation

(c).    Counsel failed to raise the issues raised in post-conviction proceedings

Respondent suggests that the Illinois Appellate Court reasonably determined that appellate counsel provided effective representation. It is noted that the failure to raise a *Batson* issue on direct appeal is not unreasonable when the claim, considered as a separate ground for relief, lacks merit.

On direct appeal, Johnson was represented by Ms. Marten, who filed a brief challenging the sufficiency of evidence supporting his convictions as well as evidentiary rulings and decisions regarding jury instructions (Doc. No. 16-1). While Mr. Rosenblum's name appeared on the brief, the brief was prepared by Ms. Marten. Ms. Marten did not argue that Johnson was entitled to a new trial because the prosecution had used peremptory challenges to exclude individuals from the jury on the basis of race.

Johnson's conviction was affirmed on August 25, 1998. Marten did not prepare or file a petition seeking rehearing and also neglected to inform Johnson about the deadline for filing that request. At some point, Rosenblum gained access to the record and prepared a memorandum indicating his opinion that Ms. Marten "has become psychologically incompetent" and that her condition "has detrimentally affected her work" on Johnson's appeal (Doc. No. 1-4). Rosenblum re-entered his appearance as Johnson's sole appellate counsel. On October 14, 1998, Rosenblum sent a copy of the Illinois Appellate Court's decision to Johnson. He notified Johnson that, in his judgment, nothing would be gained by asking for a rehearing.

The Illinois Appellate Court recognized that Johnson's claim that he had received ineffective assistance from appellate counsel was also subject to a *Strickland* analysis and struggled to evaluate the claim due to scant information linking Ms. Marten's mental health issues with work performed on Johnson's appeal. During the post-conviction proceedings,

Rosenblum explained that Ms. Marten suffered symptoms which he attributed to stress but was unable to contribute significant details due to the lapse of time (Doc. No. 16-42, pp. 4-18). In the end, the Illinois Appellate Court determined that Johnson's appellate counsel was not ineffective for failing to present a *Batson* challenge, for failing to prepare and file a petition for rehearing, or for failing to advise Johnson of the deadline for filing a petition for rehearing. Even assuming that Marten's performance was unreasonable, the Illinois Appellate Court further found the element of prejudice to be lacking (Doc. No. 16-6, pp. 10-11).

The Illinois Appellate Court's analysis of Johnson's ineffective assistance of appellate counsel claim was not unreasonable. The circumstances presented were too vague to support an inference that Ms. Marten's performance of her appeal duties had fallen below the objective standard of reasonableness. Because Johnson could not show that a meritorious *Batson* claim or that a meritorious ground for requesting a rehearing were overlooked, there was similarly an insufficient basis to find that Johnson was prejudiced by any deficient performance. Johnson is not entitled to habeas relief on Ground 9(a) or 9(c).

## IX. Conclusion

IT IS RECOMMENDED that Johnson's § 2254 petition for a writ of habeas corpus (Doc. No. 1) be DENIED. This action should be dismissed.

**SUBMITTED:** **January 13, 2012**.

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**