IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES A. JOHNSON,

     Petitioner,

v.

MIKE ATCHISON, Warden,
Menard Correctional Center,[1]

     Respondent.                 No. 10-cv-386-DRH-PMF

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

I.    Introduction

Before the Court is a Report and Recommendation ("R&R") (Doc. 23) of United States Magistrate Judge Philip M. Frazier, issued pursuant to 28 U.S.C. § 636(b)(1)(B), recommending denial of petitioner James A. Johnson's § 2254 habeas petition (Doc. 1). The R&R was sent to the parties, with a notice informing them of their right to appeal by way of filing "objections." In accordance with the notice, petitioner filed timely objections to the R&R (Doc. 26). Because petitioner filed timely objections, this Court must undertake *de novo* review of the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 73.1(b); *Willis v.*

---

[1] Warden Mike Atchison is substituted for Yolande Johnson as the respondent, due to petitioner's confinement at Menard Correctional Center. *See* FED. R. CIV. P. 25(D).

*Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992).   The Court may "accept, reject, or modify the recommended decision." *Willis*, 199 F.3d at 904.  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made.  *Id.* However, the Court need not conduct a *de novo* review of the findings of the R&R for which no objections have been made.  *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985).

The Court liberally construes petitioner's instant *pro se* petition as raising eleven separate grounds for relief. Thus, the R&R addresses petitioner's following grounds:

1. The trial court's admission of unreliable identification testimony by Lamont Wooten violated rights protected by the Fifth, Sixth, and/or Fourteenth Amendments.

2. The trial court's restriction of two categories of relevant evidence violated rights protected by the Fifth, Sixth, Eighth and Fourteenth Amendments:

    (a). Cross-examination of "six pack" members regarding .380 pistol

    (b). Testimony linking .380 pistol to a crime in the Roosevelt Homes neighborhood

3. The trial court's admission of hearsay testimony by Brandi Stiff violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

4. The trial court's rejection of proposed jury instructions describing the lesser included offenses of second degree murder and involuntary manslaughter violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

5. The prosecution's failure to prove guilt beyond a reasonable doubt on each element of first-degree murder, attempted first-degree murder, and armed robbery violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

6. The prosecutor's deliberate exclusion of persons from the jury on grounds of race violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

7. The trial court's failure to admonish jurors of their responsibilities throughout the trial violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

8. Trial counsel's deficient performance deprived petitioner of effective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments, as follows:

> (a). Counsel failed to call Demond Hendricks as a witness

> (b). Counsel failed to call other available defense witnesses

> (c). Counsel failed to allow petitioner to testify in his own defense

> (d). Counsel was impaired by psychological incapacitation

> (e). Counsel's representation was not zealous

9. Appellate counsel's deficient performance deprived petitioner of effective assistance in violation of the rights protected by the Fifth, Sixth, and Fourteenth Amendments, as follows:

> (a). Counsel was impaired by psychological incapacitation

> (b). Counsel failed to raise ineffective assistance of trial counsel

> (c). Counsel failed to raise the issues raised during post-conviction proceedings

> (d). Counsel failed to raise the issues raised during state habeas proceedings

> (e). Counsel's representation was not zealous

10. The state court rejected petitioner's meritorious claim of actual innocence in violation of rights protected by the Fifth, Sixth, and Fourteenth Amendments

11. The prosecution's amendment of charges following grand jury indictment violated rights protected by the First, Fifth, Sixth, and Fourteenth Amendments.

The R&R recommends denial of petitioner's § 2254 petition. Specifically, the R&R finds that petitioner's following grounds are procedurally defaulted: 1; 2(a) and (b); 3; 4; 5; 7; 8(b),(c),(d) and (e); and 9(b),(d), and (e). Further, the R&R concludes that petitioner's grounds 10 and 11 do not state a cognizable basis for habeas relief. Finally, in reviewing the merits of grounds 6, 8(a), and 9(a) and (c), the R&R finds that petitioner is not entitled to habeas relief. For the reasons discussed herein, the Court **ADOPTS** the findings of the R&R.

## II.   Petitioner's Objections

### 1. Background

Petitioner first objects to the R&R's recitation of the factual background of his instant confinement. After a jury trial, petitioner was convicted of two counts of first-degree murder for the deaths of Albert Greenlee and Mershelle Wooten, attempted first-degree murder for the shooting of Lamont Wooten, and armed robbery. He is currently confined at Menard Correctional Facility, where he is serving "natural life" terms of imprisonment for the murder counts and ten year terms of imprisonment on the remaining counts. The R&R relates the facts as described in the Illinois Appellate Court's Rule 23 Order affirming petitioner's

conviction on direct appeal (*See* Doc. 16-3, Rule 23 Order, *People v. Johnson*, No. 5-95-0537 (Ill. App. 1998)).

The Rule 23 Order states that on November 9, 1993, Myron Staten and Christopher Grant provided petitioner with a .380-caliber handgun. Thereafter, petitioner, along with Deangelo Carter and Demond Hendricks, went to the home of Mershelle Wooten in East St. Louis, Illinois. Mershelle Wooten shared her home with her brother, Lamont Wooten, her fiancé, Albert Greenlee, and her four children. At trial, Lamont testified that on the night in question, petitioner, Carter, and Hendricks entered Mershelle Wooten's home and sat with Greenlee and Lamont Wooten in the living room. Petitioner went to the bathroom and came out holding a handgun. At petitioner's instruction, Hendricks retrieved a sawed off shotgun from a vehicle. Petitioner then ordered Greenlee and Lamont Wooten into the bedroom with Mershelle Wooten.

Petitioner robbed Greenlee of drugs and cash and subsequently shot him on the left side of the head. As Greenlee fell, Hendricks shot him a second time with the shotgun. Petitioner then shot Mershelle Wooten in the back of the head and instructed Hendricks to kill Lamont Wooten. Hendricks shot Lamont Wooten once. He attempted a second shot. However, the shotgun jammed. Greenlee and Mershelle Wooten died, leaving Lamont Wooten as the sole survivor. After fleeing the scene, petitioner returned the firearms to Staten.

At trial, Carter, who had pleaded guilty to two counts of armed violence and was awaiting sentencing, corroborated Lamont Wooten's testimony. Carter

testified that he, petitioner, and Hendricks planned the robbery earlier that evening at the home of Tyra Cash. He further corroborated that Staten provided the gun, which the men returned to Staten following the robbery and murders. Additionally, Carter's girlfriend, Brandi Stiff, testified that she witnessed petitioner, Carter, and Hendricks at Cash's home on the night in question and that Carter told her about the robbery and murders.

Similarly, Staten and Grant testified that petitioner, Carter, and Hendricks borrowed a gun on the evening of the murders and returned it approximately thirty minutes later. Moreover, witnesses Lester Wells and Gerund Higgins testified they heard petitioner admit his involvement in the murders. Finally, the testimony of Antonio Williams, Jeanice Gunner, Patricia Richardson, Officer Joshway, Jerray Jackson, Darnell Russell, Fontonia Fortner, Officer Delbert Marion, Carlos Mosley, Racieron Staten, Officer Gerald Crenshaw, Dr. Harry Parks, Dr. Olusola Orebiyi, James Hall, and Kurt Sachtleben provided corroboration and detail to petitioner's involvement (*See* Doc. 16-3, pp. 1-10). Petitioner attempted to prove an alibi defense. However, as the Rule 23 Order notes, "the evidence presented did not place defendant elsewhere during the crucial time period of the crime" (Doc. 16-3, p. 14).

Petitioner objects to the R&R's recitation of the facts. He states, "petitioner did not acquire a firearm from [any]one, never went to the victims['] home, never robbed or shot anyone, and never instructed anyone else to do so" (Doc. 26, p. 2). The Court, in addition to the R&R, draws the above-related facts from the Rule 23

Order. Findings of fact made by state courts are presumed to be correct and may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Gonzales v. Mize,* 565 F.3d 373, 380 (7th Cir. 2009); *Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007). Petitioner's instant objection, consisting of self-serving denials, clearly fails to present the requisite clear and convincing evidence capable of rebutting the presumption of correctness attached to the state court's factual findings. The Rule 23 Order bases its findings on the corroborated statements of numerous witnesses; statements the jury clearly deemed credible. Therefore, the Court **adopts** the R&R's recitation of facts.

## 2. <u>State Court Proceedings</u>

Next, petitioner seemingly objects to the R&R's description of the state court proceedings relevant to his instant claims. As the R&R states, petitioner directly appealed his conviction, raising grounds 1 through 5 above (Doc. 16-1). The Illinois Appellate Court affirmed petitioner's conviction on August 25, 1998 (Doc. 16-3). Petitioner's late attempts to seek a rehearing and leave to appeal the Illinois Appellate Court's decision to the Illinois Supreme Court were not successful. Thereafter, petitioner completed full rounds of post-conviction and state habeas-corpus proceedings (Docs. 16-4 through 16-15). Thus, petitioner exhausted the remedies available in the Illinois state courts. Further, there are no statute of limitations issues.

Petitioner's objection states that the, "state court failed to provide a liberal construction, which would have revealed that petitioner was wrongfully convicted

by state court, now knowing that attorneys Green and Marten sat at the defense table depriving petitioner[] [of his] constitutional right to testify in support of his alibi defense, rendering counsel ineffective" (Doc. 26). Thus, it does not appear petitioner specifically objects to the R&R's recitation of petitioner's state court proceedings. Regardless, the Court **adopts** the R&R's statement of the relevant state court proceedings, as it is accurate.

### 3. <u>Procedural Default</u>

The R&R finds the following grounds are barred as procedurally defaulted, due to petitioner's failure to raise them through one complete round of state court review:

> 1. The trial court's admission of unreliable identification testimony by Lamont Wooten violated rights protected by the Fifth, Sixth, and/or Fourteenth Amendments.
>
> 2. The trial court's restriction of two categories of relevant evidence violated rights protected by the Fifth, Sixth, Eighth and Fourteenth Amendments:
>
>> (a). Cross-examination of "six pack" members regarding .380 pistol
>>
>> (b). Testimony linking .380 pistol to a crime in the Roosevelt Homes neighborhood
>
> 3. The trial court's admission of hearsay testimony by Brandi Stiff violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.
>
> 4. The trial court's rejection of proposed jury instructions describing the lesser included offenses of second degree murder and involuntary manslaughter violated rights protected by the Fifth, Sixth, Eighth, and Fourteenth Amendments.

5. The prosecution's failure to prove guilt beyond a reasonable doubt on each element of first-degree murder, attempted first-degree murder, and armed robbery violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

7. The trial court's failure to admonish jurors throughout trial violated rights protected by the Fifth, Sixth, and Fourteenth Amendments.

8. Trial counsel's deficient performance deprived petitioner of effective assistance in violation of the Fifth, Sixth, and Fourteenth Amendments, as follows:

> (b). Counsel failed to call other available defense witnesses.

> (c). Counsel failed to allow petitioner to testify in his own defense.

> (d). Counsel was impaired by psychological incapacitation.

> (e). Counsel's representation was not zealous

9. Appellate counsel's deficient performance deprived petitioner of effective assistance in violation of the rights protected by the Fifth, Sixth, and Fourteenth Amendments, as follows:

> (b). Counsel failed to raise ineffective assistance of trial counsel

> (d). Counsel failed to raise the issues raised during state habeas proceedings

> (e). Counsel's representation was not zealous

As the R&R correctly notes, the Supreme Court in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999), held that a habeas petitioner is required to pursue a discretionary appeal in the State's highest court to satisfy the exhaustion requirement of 28 U.S.C. § 2254(c).  Failure to do so results in procedural default. *Id.* at 848. As noted above, petitioner's direct appeal addressed his

instant grounds 1 through 5. Petitioner did not appeal the Illinois Appellate Court's decision affirming his conviction to the Illinois Supreme Court, as his late efforts to receive a rehearing and petition for leave to appeal were unsuccessful. Further, petitioner either omitted grounds 7, 8(b), 8(c), 8(d), 8(e), 9(b), 9(d), and 9(e) when he appealed the denial of his post-conviction petitions or when he sought leave to appeal to the Illinois Supreme Court, or they represent arguments never raised prior to the instant proceeding (*See* Docs. 16-7, 16-13).

As petitioner's direct appeal became final prior to *Boerckel,* he objects to its application to his claims. However, the *Boerckel* Court itself applied its decision retroactively to Boerckel, concluding that he had procedurally defaulted. Further, the Seventh Circuit has specifically noted that *Boerckel's* holding is retroactive in application. *Moore v. Casperson,* 345 F.3d 474, 487 (7th Cir. 2002); *Rittenhouse v. Battles,* 263 F.3d 689, 697 (7th Cir. 2001). Thus, as the R&R correctly states, petitioner's above-cited grounds are procedurally defaulted.

Petitioner further objects to the R&R's finding that he has not shown "cause" capable of overcoming procedural default. "Cause" sufficient to excuse procedural default requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Where ineffective assistance of appellate counsel is asserted as cause for a procedural default, the petitioner must fairly present the assertion to the state courts as an independent claim.

*Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000); *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).

Petitioner argues the psychological incapacitation of his appellate counsel, Ramona L. Marten, contributed to and excuses his procedural default. In reviewing petitioner's arguments, renewed in his instant objections, the R&R correctly concluded that petitioner has not presented a sufficient showing of "cause" to excuse his procedural default.  At trial, Marten, an associate at Scott Rosenblum's law office, represented petitioner.   Marten also represented petitioner in his direct appeal (Doc. 16-40, p. 13). However, sometime after representing petitioner on direct appeal, Marten experienced work-related stress and ended her employment with Rosenblum (Doc. 16-42, pp. 6-7). After resolution of petitioner's appeal, Rosenblum prepared an affidavit acknowledging Marten's psychological issues and suggesting her work on petitioner's case suffered (Doc. 16-42, p. 7). However, during petitioner's post-conviction hearing, Rosenblum noted, "Ramona did a very good job on – in writing briefs and in appellate work, and the issues were litigated on direct appeal" (Doc. 16-42, p. 9). Rosenblum further noted that he obtained petitioner's file and decided a motion for rehearing or transfer wasn't necessary and suggested that petitioner could proceed to federal court (Doc. 16-42, p. 9).

In reviewing *de novo* the R&R's determination that the above-related facts do not constitute cause for petitioner's procedural default, the Court adopts the R&R's finding. The R&R concludes that Marten's failure to advise petitioner to

include the defaulted claims in a petition for leave to appeal to the Illinois Supreme Court does not qualify as the type of "objective factor external to the defense" contemplated under *Murray. Murray*, 477 U.S. at 488. By way of example, *Murray* states such external factors could include, "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or "that some interference by officials made compliance impracticable." *Id.* (quotations and citation omitted).   Petitioner has not presented evidence of such objective external factors. Moreover, Rosenblum, an attorney whose competence is not instantly challenged, reviewed petitioner's file and determined additional action was not required regarding petitioner's appeal.

Additionally, petitioner's right to receive effective assistance from counsel did not extend beyond his direct appeal. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals"); *Anderson v. Cowan,* 227 F.3d 893, 901 (7th Cir. 2000) (counsel's performance in failing to raise ineffective assistance of counsel claim in discretionary petition to Supreme Court of Illinois did not constitute "cause" to excuse procedural default, as there is no constitutional right to pursue discretionary state appeals). Further, while petitioner's post-conviction proceedings did raise a claim of ineffective assistance of appellate counsel, petitioner did not argue that Marten provided inadequate assistance in failing to advise petitioner regarding his ability to seek leave to appeal from the Illinois Appellate Court (Doc. 16-4, p. 14).   Finally, petitioner

does not even address the procedural default of his instant claims that are unrelated to Marten's representation. Thus, the R&R correctly concludes that petitioner has not demonstrated "cause" sufficient to excuse his procedural default. As petitioner has not demonstrated "cause," there is no need to address prejudice.

Finally, the R&R concludes that even in the absence of cause and prejudice, petitioner's procedural default should not be excused to avoid a fundamental miscarriage of justice. To satisfy this narrow exception, petitioner must demonstrate that the constitutional deprivation caused the conviction of an innocent person. *Schlup v. Delo,* 513 U.S. 298, 327-29 (1995). Thus, petitioner must show that it is more likely than not that no reasonable juror would have convicted him upon consideration of new evidence. *Id.*

The R&R concludes that petitioner has not presented specific new evidence of his actual innocence. Petitioner's objection to the R&R's finding of procedural default only addresses whether "cause" to excuse such default exists. Thus, in reviewing the R&R's finding that petitioner has not presented evidence of a fundamental miscarriage of justice for clear error, the Court adopts the R&R's finding. *See Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir. 1999). Thus, the Court **adopts** the finding of the R&R and holds that petitioner's instant grounds 1; 2(a) and (b); 3; 4; 5; 7; 8(b),(c),(d), and (e); and 9(b),(d), and (e), are barred from review on the basis of procedural default.

### 4. <u>Non-Cognizable Claims: Grounds 10 and 11</u>

Petitioner further objects to the R&R's finding that the following grounds are not cognizable in this proceeding:

10. The state court rejected petitioner's meritorious claim of actual innocence in violation of rights protected by the Fifth, Sixth, and Fourteenth Amendments.

11. The prosecution's amendment of charges following a grand jury indictment violated rights protected by the First, Fifth, Sixth, and Fourteenth Amendments.

The R&R notes that Section 2254 authorizes federal courts to entertain an application for a writ of habeas corpus only on the ground that the applicant is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Thus, the R&R finds that ground 10 is not cognizable, as there is no federally recognized right to avoid custody based on a claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (reserving the question of whether federal courts may entertain claims of actual innocence in death penalty claims). It further finds that ground 11 is not cognizable, as the Fifth Amendment guarantee of indictment by grand jury extends only to *federal* prosecutions and has not been incorporated to the States through the Fourteenth Amendment. *Hurtado v. California,* 110 U.S. 516, 535 (1884). Accordingly, the R&R notes petitioner's concerns regarding the prosecution's amendment of the grand jury's bill of indictment by a less formal information does not raise a federal claim for habeas relief. *See Bae v. Peters,* 950 F.2d 469, 478-79 (7th Cir. 1991) ("Since [petitioner] was not entitled to a grand jury indictment, his claim that the

indictment's amendment deprived him of his right to a grand jury indictment states no federal claim upon which to grant a writ of habeas corpus.").

Petitioner does not object to the R&R's finding that petitioner's ground 10 is not cognizable. However, he does object to the finding that ground 11 is not instantly cognizable, stating, "[i]dictment by grand jury in Illinois is not the only charging mechanism. However[,] Illinois law holds that once true bill is returned by a grand jury it may not be altered except by the grand jury itself" (Doc. 26, p. 4). Thus, petitioner's claim relates to the sufficiency of the indictment under state law. He does not, for example, argue the indictment was so vague as to deprive him of due process. *See Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *Bae,* 950 F.2d at 478. Thus, petitioner's claim is not instantly cognizable.  Accordingly, the Court **adopts** the R&R's finding that grounds 10 and 11 are not cognizable in this proceeding.

**5. <u>Merits Review: Ground 6</u>**

The R&R reviewed the merits of petitioner's ground 6, arguing that the prosecutor deliberately excluded persons from the jury on the basis of race in violation of rights protected by the Fifth, Sixth, and Fourteenth Amendments. The R&R finds there is no basis to hold that the Illinois Appellate Court applied the wrong legal standard or made an unreasonable determination that the prosecutor exercised race-neutral peremptory challenges to remove potential jurors Lavoriss Crawford, Cleo Callahan, Patrice Perry, and Audrey Mitchell. *See Felkner v. Jackson,* --- U.S. ----, 131 S. Ct. 1305, 1307-08 (2011) (per curiam). Petitioner

objects, stating, "the State excluded voir dire jurors based on race" (Doc. 26, p. 4).

The Constitution prohibits prosecutors from removing jurors on the basis of race. *Batson v. Kentucky*, 476 U.S. 79 (1986). Concerning the selection of petitioner's jury, voir dire of 83 potential jurors was held over two days. Prior to trial, the State gave notice of its intent to seek the death penalty. Before choosing the jury, petitioner's trial counsel noted defendant is black, while the State noted that all three victims were also black. The prosecutor selected three black females to serve as jurors and one black male to serve as an alternate.

The prosecutor was asked to give race-neutral explanations concerning the use of peremptory challenges to exclude certain black potential jurors. As to Crawford, the prosecutor explained that Crawford's brother had been charged and convicted of a violent crime in the same county less than ten years earlier. The prosecutor's notes further indicated she had a question in her mind regarding whether Crawford could "follow the law" should the death penalty become an issue (Doc. 16-6, p. 5). As to Callahan, Perry, and Mitchell, the prosecutor explained that she exercised peremptory challenges to strike these potential jurors due to comments made during voir dire concerning their ability to impose the death penalty (Doc. 16-6, pp. 5-6).

Upon reviewing the voir dire transcript, the Illinois Appellate Court determined the State's stated reasons were race-neutral. Specifically, the appellate court found the State challenged Crawford as one of petitioner's charged crimes

was armed robbery and Crawford's brother was convicted of armed robbery in the same county. As to the other three potential jurors, the appellate court found the State exclusively challenged them due to answers provided concerning their ability to objectively serve on a death penalty case (Doc. 16-6, p. 7).

The Court may only grant petitioner habeas relief provided he can demonstrate the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). A state court unreasonably applies Supreme Court precedent if the correct rule is unreasonably applied to the facts of the particular case or the state court unreasonably extends or refuses to extend a principal of law to a new context. *Williams v. Taylor*, 529 U.S. 362, 405-07 (2000); *Sutherland v. Gaetz*, 581 F.3d 614, 616 (7th Cir. 2009).

As the R&R correctly finds, petitioner has not presented a basis for holding the Illinois Appellate Court's evaluation unreasonable. Concerning petitioner's ground 6, his petition merely states, "the prosecution excluded black venire person[]s" (Doc. 1-3, p. 15). Thus, petitioner's subjective belief that the prosecutor excluded potential jurors on the basis of race does not afford him habeas relief.

The Illinois Appellate Court carefully reviewed the transcript of voir dire and found the State did not exclude jurors on the basis of race.  Considering the presumption of correctness provided to factual findings of state courts, this Court has no reason to disagree with that finding. 28 U.S.C. § 2254(e)(1). Further, as the Illinois Appellate Court did not unreasonably apply the framework of *Batson*

to the facts of petitioner's case, there is no basis to find it applied the wrong legal standard or made an unreasonable determination that the prosecutor did not exclude the disputed jurors on the basis of race. *Felkner*, 131 S. Ct. at 1307 (explaining *Batson* issues turn largely on an "evaluation of credibility;" thus, the trial court's determination is entitled to "great deference" and "must be sustained unless it is clearly erroneous") (quotations and citation omitted). Accordingly, the Court **adopts** the R&R's finding that petitioner's ground 6 does not warrant habeas relief.

### 6. Merits Review: Ground 8(a)

Petitioner's ground 8(a) alleges that trial counsel's deficient performance deprived him of effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments by failing to call Hendricks as an alibi witness. The R&R finds that the Illinois Appellate Court did not unreasonably apply the standard of *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984), in holding that trial counsels' decision not to call Hendricks as a witness was a strategic call that fell within the wide range of reasonable professional assistance. Petitioner objects, stating, "[t]he deprivation of counsel, right to testify in alibi defense suppressed [corroborating] evidence" (Doc. 26, p. 4). Thus, it appears petitioner's objection relates to the fact that he did not testify concerning his alibi defense; an issue not properly before the Court. Nevertheless, a *de novo* review of the R&R's instant finding demonstrates petitioner's ground 8(a) is without merit.

At trial, privately retained attorneys Joseph Green and Marten represented petitioner. Trial counsel called a number of alibi witnesses in petitioner's defense. However, they did not call Hendricks. In petitioner's post-conviction proceedings, he submitted an affidavit of Hendricks in which he stated that he would have testified that on the day the crimes were committed, petitioner spent the entire day at the home of Cash.

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the second prong, petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Porter v. Gramley*, 122 F.3d 351, 353 (7th Cir. 1997) (citation omitted). When reviewing claims of ineffective assistance of counsel in habeas petitions, however, a district court must honor any reasonable state court decision, since "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997).

In correctly applying the *Strickland* standard, the Illinois Appellate Court reviewed the record and determined that petitioner's trial counsel deliberately

opted not to call Hendricks for strategic purposes, as Lamont Wooten initially named Hendricks as the shooter and only later named petitioner. Further, Hendricks had a criminal history which would most likely have come to light had he testified. Finally, the Illinois Appellate Court reasoned that petitioner's trial counsel was likely concerned that several witnesses would place a firearm in Hendricks' possession on the night of the murders and relate that Hendricks fled to Texas following the crimes. Thus, given Hendricks' character and direct involvement in the case, the Illinois Appellate Court determined that trial counsels' decision not to call Hendricks as a witness did not meet the requisite standard of ineffectiveness, as distancing petitioner from Hendricks was a "far sounder strategy." Additionally, the court noted trial counsel vigorously cross-examined all of the witnesses (Doc. 16-6, pp. 7-9).

The R&R correctly finds that petitioner has not demonstrated that the Illinois Appellate Court unreasonably applied the *Strickland* standard. The Illinois Appellate Court evaluated all of the relevant circumstances to determine that the decision not to call Hendricks as an alibi witness was a valid strategic decision that fell within the wide range of reasonable professional assistance. Accordingly, the Court **adopts** the R&R's finding that petitioner's ground 8(a) is without merit.

The Court finds it necessary to note that petitioner's instant objection also states, "[t]his court should have, and still should appoint counsel considering these claims" (Doc. 26, p. 4). The Court previously drafted an Order denying

petitioner's request for counsel, as his undocumented statement that he, "sent out numerous letters to law firms, attorneys and legal organizations requesting pro bono representation," did not adequately demonstrate petitioner made a reasonable attempt to obtain counsel before soliciting the Court to provide him counsel. *See Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).   However, it has come to the Court's attention that the *pro se* law clerk assigned to petitioner's case did not docket the Order denying petitioner's request for counsel (Doc. 5).[2] Nevertheless, the Court finds this inadvertence does not affect the outcome of the instant petition. Petitioner has adequately represented himself; the insurmountable impediment to his requested relief is his petition's lack of merit.

**7. <u>Merits Review: Grounds 9(a) and (c)</u>**

Finally, petitioner objects to the R&R's finding that the Illinois Appellate Court's analysis of petitioner's ineffective assistance of appellate counsel claim was unreasonable. Petitioner states, "a 'common sense' look at this issue shows that attorney Marten[[']s mental health condition caused [deficiencies] and problems that petitioner is still attempting to overcome over a decade later" (Doc. 26, p. 4).

Petitioner's grounds 9(a) and (c) claim ineffective assistance of appellate counsel, as his counsel was impaired by psychological incapacitation and failed to raise the issues raised during post-conviction proceedings. On direct appeal, Marten prepared a brief challenging the sufficiency of the evidence supporting

---

[2] Although the docket entry states it is an Order denying petitioner's request for counsel, it is in fact a duplicate of the Court's Order referring petitioner's case to Magistrate Judge Frazier (Doc. 4).

petitioner's conviction, various evidentiary rulings, and decisions regarding jury instructions (Doc. 16-1). Marten did not argue petitioner was entitled to a new trial because the prosecution had used peremptory challenges to exclude potential jurors on the basis of race.

On August 25, 1998, the Illinois Appellate Court affirmed petitioner's conviction (Doc. 16-3). Marten did not prepare or file a petition seeking rehearing and neglected to inform petitioner of the deadline for filing such request. As explained previously, at some point, Rosenblum obtained petitioner's appellate file and prepared a memorandum stating, "Marten has become psychologically incapacitated, which condition has detrimentally affected her work in the above-matter. It also prevented undersigned counsel from taking physical possession of the appellate file [until now]" (Doc. 1-4, p. 1). Rosenblum further indicated that he was reviewing petitioner's appellate file, in his capacity as petitioner's sole appellate counsel, and would request a rehearing should he feel it necessary. However, shortly thereafter, on October 14, 1998, Rosenblum sent petitioner a copy of the Illinois Appellate Court's decision affirming his conviction on direct appeal, stating, "it is my professional judgment that nothing would be gained from requesting a rehearing by the appellate court" (Doc. 1-4, p. 3).

Similarly to the R&R, the Court finds that the Illinois Appellate Court's analysis of petitioner's ineffective assistance of appellate counsel claim under *Strickland* was not unreasonable. Concerning Marten's failure to raise a *Batson* challenge on appeal, the court held Marten was not ineffective for not raising such

a claim, as it was meritless. Further, as to Marten's failure to file a petition for rehearing and to inform petitioner of the deadline for doing so, the court noted that even assuming Marten's performance was unreasonable, petitioner could not cite prejudice resulting from such failure. The Illinois Appellate Court affirmed petitioner's conviction, concluding that none of petitioner's claims had merit and that the evidence overwhelmingly supported his conviction for first-degree murder. As petitioner could not cite a meritorious reason for rehearing, his appellate counsel was not ineffective for failing to so petition (Doc. 16-6, pp. 10-11). Thus, as petitioner could not demonstrate that Marten overlooked a meritorious *Batson* claim or ground for rehearing, the Illinois Appellate Court did not unreasonably apply *Strickland* to the facts and circumstances of petitioner's claims.  Accordingly, the Court **adopts** the R&R's finding that petitioner's grounds 9(a) and (c) do not entitle petitioner to habeas relief. Thus, the Court adopts the R&R in its entirety and dismisses petitioner's claims with prejudice.

### III.   <u>Certificate of Appealability Denied</u>

Should petitioner desire to appeal this Court's ruling dismissing his petition for a writ of habeas corpus, he must first secure a certificate of appealability, either from this Court or from the court of appeals.  *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).  Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but petitioner must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part.  *Id*. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  If the district court denies the request, a petitioner may request that a circuit judge issue the certificate.  FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that petitioner's claims are either procedurally defaulted, non-cognizable, or without merit.  Therefore, petitioner is not entitled to relief pursuant to 28 U.S.C. § 2254.  Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect.  Thus, petitioner has not made "a substantial showing of the denial of a constitutional right."  Accordingly, the Court **SHALL NOT ISSUE** a certificate of appealability.

## IV. <u>Conclusion</u>

For the reasons discussed herein, the Court **ADOPTS** the findings of the R&R (Doc. 23) over petitioner's objections (Doc. 26). Thus, petitioner's Section 2254 habeas petition (Doc. 1) is **DENIED**. Accordingly, petitioner's claims are hereby **DISMISSED WITH PREJUDICE**. Further, the Court **SHALL NOT ISSUE** a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 8th day of August, 2012.

Digitally signed by
David R. Herndon
Date: 2012.08.08
15:05:30 -05'00'

**Chief Judge**
**United States District Court**